## N. Y. SUPERIOR COURT.

The New Haven and Northampton Company agt. Edward A. Quintard, *et al.*

Under section 158 of the Stamp Act of June 30, 1864, the omission to affix a proper stamp does not avoid an instrument unless such omission was with intent to evade the provisions of the act.

Therefore one who seeks to exclude from being given in evidence an instrument by reason of its invalidity in not being properly stamped must show affirmatively that the omission was with the intent to evade the provisions of the act.

But, if the burden of proving the absence of such intent was on the party offering the instrument, still, if it be received by the court under the general objection that the want of a proper stamp renders it invalid, a judgment will not be reversed by reason of such reception.

As the defect arising from the want of a proper stamp could have been remedied by evidence as to the intent of the omission, the objection, to be tenable (in case of reception), must be placed on the ground of the absence of such evidence.

*General Term, January,* 1869.

Odell, *for appellant.*
Cadwalader, *for respondent.*

*By the court,* Jones, J. (After disposing of other points in this case). Another objection urged, is that the agreement was not properly stamped under the United States stamp act.

The stamp act applicable to this case is that of June 30, 1864, which took effect August, 1864, and the point arises under the 158th section of that act, which is as follows:

"Sec. 158. And be it further enacted, that any person or persons who shall make, sign, or issue, or who shall cause to be made, signed, or issued, any instrument, document, or paper of any kind or description whatsoever, or shall accept or pay, or cause to be accepted or paid, any bill of exchange, draft or order, or promissory note for the pay-

ment of money, without the same being duly stamped or having thereon an adhesive stamp for denoting the duty chargeable thereon, *with intent to evade the provisions of this act,* shall, for every such offence, forfeit the sum of two hundred dollars; and such instrument, document, or paper, bill, draft, or order, or note, shall be deemed invalid and of no effect."

The point is not well taken for two reasons.

1. There is no evidence that the omission to affix the proper stamp was *with intent to evade the provisions of this act.* It is necessary that the omission should be *with such intent* in order to invalidate the instrument; and the burden of proving such intent lies on the party seeking to invalidate the agreement in this case.

1. Even if the burden of proof was upon the plaintiff, yet the defendant cannot now take advantage of the defect of proof; for on his motion of a non-suit he did not call the attention of the plaintiff to such defect. If he had, it might have been supplied. He claimed, on the motion for a non-suit, that the bare omission of the stamp of itself invalidated the agreement. This was his only claim, and in this he was in error.

MONELL, J. One of the questions in this case is whether the contract was invalid by reason of not being stamped, as required by the 158th section of the act of Congress of June 30, 1864. That section provides that any person who shall make any instrument, &c., "without the same being duly stamped, or having thereupon an adhesive stamp for denoting the duty chargeable thereon, *with the intent to evade the provisions of this act,*" shall forfeit, &c., and such instrument "*shall be deemed invalid and of no effect.*"

The instruments which formed the contract in this case were six several letters, written by the parties respectively, commencing on the 23d of April, and ending on the 13th of December, 1864; and the plaintiff proved that in April,

1865, after the commencement of the action, they placed the required revenue stamp upon *one* of the letters addressed to them by the defendants which letter contained the offer of the defendants to sell to the plaintiff the coal in question.

The form of the contract in this case illustrates one of the difficulties in the practical working of the Revenue Stamp Act. Where an entire agreement is included in one instrument, signed by the respective parties, the letter of the act can be complied with; but where the agreement consists of separate instruments, each signed by one party only, at a different time, or, as in the case before us, of six letters, written at intervals, during a period of eight months, and where no contract is formed until the last instrument is signed and delivered, or the last letter is sent and received, it is difficult to determine when, or upon which of the several instruments the revenue stamp shall be placed. I do not understand the act to require that each of the several parts of the agreement shall be stamped, but merely that each sheet or piece of paper upon which it is written shall be stamped; and yet in no other way could there have been in this case a compliance with the statute.

The language of the act is, that "any person who shall make, sign, or issue * * * any instrument, document, or paper, of any kind or description whatsoever, shall forfeit, &c." This language would indicate that each of the separate parts of an instrument, when signed, shall be stamped; so that a written offer to sell must be stamped at the time it is written or sent, although it has not been and may never be accepted, and until acceptance it is of no force or effect. But there are other parts of the act which, in effect, define the meaning of any "instrument, document, or paper."

The stamp required is one "denoting the duty chargeable thereon," and the several kinds of instruments, &c., are designated, and the duty prescribed. Thus, among others, "agreement, contract, or appraisement," require, for each

sheet or piece of paper on which the same is written, a stamp of five cents. A contract, therefore, is an "instrument" affected by the section of the act before referred to, and although when made, each sheet or piece of paper on which it is written must be stamped, yet the act nowhere requires such stamp to be affixed while the contract is merely inchoate. Otherwise, it would be necessary to affix a stamp when each of the incipient writings when written, and to cancel them, as required by the act. Yet such incipient writings, with canceled stamps thereon, may not become a part of any contract, as where a written *offer* to sell is not accepted or agreed to. The sensible construction of the act would seem to be, that a contract *when formed* shall be stamped upon each sheet with the required stamp. Of course the act relates to *written* instruments only. A *parol* contract is not within its provisions.

The act declares that an instrument not so stamped shall be deemed invalid and of no effect, and as it is required to be so stamped at the time the instrument is made, the invalidity relates to the time of making. It is therefore, at least, very questionable whether a subsequent affixing of a stamp would render a contract valid, unless it was affixed in the manner provided by the amendment of the 158th section, by the act of March 3, 1865. I do not, however, propose to examine that question, for it seems to me very clear that the contract in this case was not invalid and of no effect, unless the omission to affix a proper stamp thereon was *with intent to evade the provisions of the act.*

Nor is it important to consider the amendment of July 13, 1866, which provides that no instrument required to be stamped, which has been signed or issued without being stamped, shall be admitted in evidence, until a stamp shall have been affixed thereto. In this case the stamp was affixed before trial. Besides, the amendment referred to merely excludes the instrument from being read in evidence, but does not affect its validity.

New Haven and Northampton Co. agt. Quintard-

This brings me to the principal question namely, upon whom the burden lies of showing such intent.

As respects the *penalty*, the act casts the burden upon the party seeking its remission to prove there was no intent to to evade the law; but the causes which render a contract invalid are left to be established in such manner and by such party as, according to the rules of pleading or of evidence, is usual.

A party objecting, as an unvarying rule, is deemed to hold the affirmative, and must furnish the necessary evidence to predicate the objection. Therefore, if it is objected that an instrument is void, by reason of its not being stamped, the objector must show that the omission of the stamp was with intent to evade the revenue law.

The section is very clear on this subject. Any person who shall make any instrument, and shall, *with intent to evade the law*, fail to affix thereon a proper stamp, shall forfeit, &c., and such instrument shall be invalid. The fraudulent intent is the offense, and if none exists there is no penalty.

In all cases of penalty or of crime the law presumes innocence, and guilt must be established to secure conviction. The Revenue Act is a penal statute, and if an action was necessary to obtain the fine, no one will doubt that it would be necessary for the government to *show* a fraudulent intent to repel the presumption of innocence. No such action, however, is required, the government being authorized to collect the penalty in the manner that other revenue is collected.

There are two quite different effects resulting from omitting to affix a revenue stamp upon a contract or other instrument. One inures to to the government, and the other to individuals; but they do not arise from the same cause. The forfeiture or penalty, which belongs to the government, is incurred whenever a person makes an instrument, and omits to stamp it, and the penalty may be, as before stated,

collected without action. But if such person seeks a remission of the forfeiture, *he* must satisfy the collector of his innocence of any design to defraud the revenue. Where the effect, however, of omitting the stamp inures to individuals, the omission must be connected with a fraudulent design, which the party seeking to avail himself of the effect must establish by competent proof.

The revenue act is like our statute concerning fraudulent conveyances, which renders void every conveyance made with the intent to hinder, delay or defraud creditors. To avoid a conveyance under that statute, the *onus* is upon the creditor to establish the fraudulent intent. Indeed, under any statute which, for stated reasons, renders a contract or other instrument void, the attacking party holds and must prove the affirmative. A note void for usury, or under the gaming laws, or for an insufficient consideration, or contracts *contra bonus mores*, must be shown to be void for these reasons, by the party setting up the objection. Yet in those cases the statute declares the instruments to be void for these reasons only.

If I am correct in the construction of the act, the objection of the appellant's counsel, that the plaintiff failed to prove a *valid* contract, is not sound. I think I have shown that something more than failure to affix a stamp was necessary to invalidate the contract, namely, that the act of omission was with a fraudulent design. I have also, I think, shown where the *onus probandi* lies. The production of an unstamped contract is proof of a *legal* contract, and is sufficient proof until its invalidity is shown by bringing it within the provisions of the act. The rule of strict constrution of a penal statute has no application to that part of the revenue act which merely renders contracts void, and a clear discrimination is made between the two cases. Congress did not intend, nor does the act require, that the usual rules of evidence should be changed. Had there been such intent,

provision would have been made for relieving parties, as are made in respect to the penaly.

In the case of *Beebe* agt. *Hutton*, (47 *Barb.*, 187), it is intimated that it is incumbent upon the party claiming the benefits of a contract to establish his innocence of any fraudulent design. While I fully concur in most of the views so ably expressed in the very learned opinion in that case, I must dissent from the point to which I have referred, for the reasons which I have already stated. I see nothing in the statute which takes it out of the reason of the ordinary rule, which requires proof from the party holding the affirmative, not only because it is impossible to prove a negative, but because the negative does not admit of the direct and simple proof of which the affirmative is capable.

The case of *Vorebeck* agt. *Roe* (50 *Barb.*, 302), substantially sustains the views I have expressed. In the case of *Meyers* agt. *Smith*, (48 *Barb.*, 536), the court did not notice the very significant words in the act " with intent to evade," &c., but merely *assumed* that the contract was invalid, because not stamped.

My conclusion is, that an objection to a contract or other instrument because it is not stamped as required by the revenue laws, is unavailing, unless the *party objecting* prove that the stamp was omitted with intent to evade the act of congress, and that the mere failure or neglect to affix the stamp is not evidence of such intent.

Concurring in the views expressed by Mr. Justice JONES in this case, I am of opinion that the judgment, as modified by him, should be affirmed.

FITHIAN, J., concurred.