WILLIAM JONES, Respondent, *v.* WILLIAM TURNER, Appellant.

*A judgment debtor employed by his creditor to carry on a manufacturing business — liability of the creditor under a contract with his debtor — set-off of the debt.*

Whatever may be fairly implied from the terms of a written instrument is in judgment of law contained therein.

William Turner having recovered a judgment against William Jones, levied upon and sold thereunder the pottery of the debtor with his manufactured and unmanufactured wares. After crediting the amount realized on such sale there remained a balance due on the judgment of $1,291.57, Jones being also indebted to Turner in the further sum of $935.47. A contract was entered into between the parties by which it was in substance agreed that Jones should keep on at the factory and complete the unfinished wares and make new wares, and that Turner should pay monthly all hands employed in the manufactory, including the wages of Jones at three dollars a day, and should furnish and pay for the raw material and fuel necessary to carry on the business, and should sell the wares for the highest prices he could obtain and render a statement of the sales of the same to Jones; that out of the proceeds of the sales, after deducting the amounts paid for labor, material, insurance and freight for the wares, Turner should retain the balance due on said judgment, with lawful interest, and also his other demands against Jones. When such amounts were fully paid Turner was to retransfer the property to Jones. Jones commenced work under the contract on September 20, 1888, and continued to work thereunder until June 13, 1889, when the work was suspended and never recom-

menced. At the time the work ceased the market was dull, sales could not be made and the expenses of the business exceeded the receipts.

Upon the trial of an action brought by Jones to recover the amount due him from Turner under such contract it was shown that the amount received from the sales of goods, over and above the expenses, including the amount due Jones, was $484.53; that under the agreement Jones furnished materials and services so that a claim accrued in his favor against Turner for the sum of $1,132.67, on account of which Turner furnished goods of the value of $463.78, leaving a balance due Jones of $668.89 for which judgment was directed in favor of Jones.

*Held,* that although the defendant might be able, at any time when it was apparent that the business provided for in the contract could not be carried on with profit, to terminate the same, yet it was his duty if he desired to end the contract to serve a notice to that effect on the plaintiff, and that in the absence of evidence of his election to terminate the contract, he was liable for the amount due to the plaintiff thereunder;

That the defendant could not in such action set off his demands against the plaintiff's claim for services and disbursements under the contract.

APPEAL by the defendant, William Turner, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Clinton on the 17th day of April, 1893, upon the report of a referee, with notice of an intention to bring up for review on such appeal the said judgment and the report of the referee.

*T. F. Conway,* for the appellant.

*L. L. Shedden,* for the respondent.

PUTNAM, J.:

The defendant, on September 10, 1888, recovered a judgment against the plaintiff for $2,303.37. He afterwards levied upon and sold the pottery of the plaintiff with its manufactured and unmanufactured wares. After crediting the amount realized on such sale there remained a balance owing defendant on the judgment of $1,291.57. Plaintiff was also indebted to defendant for other demands, amounting in all to $935.47.

The parties thereupon entered into the contract of September 19, 1888, by which it was agreed in substance as follows:

That the plaintiff should go on at the factory and complete the unfinished wares, and make new wares; defendant should pay

monthly all hands employed in the manufactory, including the wages of Jones, at three dollars a day, and should furnish and pay for the raw material and fuel necessary to carry on the business. Turner was to sell the wares for the highest prices he could obtain, and render a statement of the sales of the same to Jones. Out of any proceeds of the sales, after deducting the amounts paid for labor, material, insurance and freight for the wares, Turner should retain the balance due on said judgment, with lawful interest, and also his other demands against plaintiff. When such amounts were fully paid, Turner was to transfer back to Jones the property.

Under the contract, plaintiff, on September 20, 1888, commenced work and continued until June 13, 1889, when work was suspended and has never been again commenced. At the time work ceased the market was dull and sales could not be made, and the expenses of the business had exceeded the receipts.

At the time of the trial it appeared, according to the computation of defendant's counsel, that the amount received from the sales of goods over the expenses, including the amount due plaintiff, as hereinafter specified, was the sum of $484.53.

Under this agreement, plaintiff furnished materials, and with his two minor sons performed services so that a claim accrued in his favor against the defendant for the sum of $1,132.67, on account of which defendant furnished goods of the value of $463.78, leaving a balance due plaintiff of $668.89. The referee directed judgment for the said sum, with interest.

Defendant urges that the pottery business carried on under the contract set out in the complaint, not being profitable, and it having been made to appear that the net profits would not pay his aforesaid claims against plaintiff, he had the right to terminate the contract and suspend operations under it. Also, that he could set off his aforesaid demands against any claim the plaintiff had for services under the contract. The contract provides for its continuance " for such length of time and to such an extent as will enable the said Turner by sale of finished ware purchased by him this day, and by sale of that so to be finished and manufactured in the future, will enable the said Turner, out of the net proceeds of all sales, to pay in full the said Murray debt and judgment aforesaid, with interest." We are not prepared to say that under the above-quoted clause, and

the other provisions of the contract, and considering the purpose and intent of the parties, defendant would not have been able, at any time when it became apparent that the business provided by the writing could not be carried on with any profit, to terminate and end the same. But there is no evidence, and no finding of 'the referee in the case, to indicate that when the action was commenced the defendant had elected to terminate the contract. Plaintiff testified : " Turner never told me that he did not intend to go on with the business. The first I knew was when he got the other men to pack the goods. I did not understand, up to the time the suit was commenced, that Turner did not intend to go on with the contract. He never told me he did not intend to do so and I expected all the time to go on. I locked the building every night. I don't know if I gave the key to Mr. Turner. His son asked me for the key. I did not give it to him. The door to which I had the key was the one we went in at."

No evidence is produced on the part of defendant showing that he had elected to terminate the contract before the commencement of the action. Nor is such a defense asserted in the answer. The only statement contained therein in that regard is as follows : " And for such reasons the said business was, on or about May, 1889, suspended and no work has since been done, no labor employed, and the plaintiff has not been since in the defendant's employment."

If defendant desired to end the contract it was his duty to serve a notice to that effect on the plaintiff, or in some manner to notify the latter of his election. All that appears in the case and all that was alleged· in defendant's answer was that when the action was commenced work was suspended under the contract. It did not appear that the contract was terminated. On the trial plaintiff was only allowed to recover for the services of himself and sons actually performed — not for future services. He was not allowed to recover damages for breach of the contract. The defendant objected to such a recovery, and any claim for damages for breach of the contract was abandoned on the trial by the plaintiff.

As far as the case shows, therefore, when the action was commenced the contract was in force, and the question arises whether under the provisions thereof the defendant could set off his aforesaid demands against the plaintiff's claim for services and disbursements.

A careful reading of the contract in question leads us to the conclusion that the learned referee made a proper disposition of the case. By the contract Jones was to go on and complete the unfinished work and manufacture new wares. Turner was to pay Jones at the expiration of each month for necessary labor and material, including Jones' services, at three dollars per day. The goods were to be marketed by Turner, and with the net proceeds, after deducting the amount required to pay for labor and materials, Turner was to pay his aforesaid claims. When said claims were paid Turner was to transfer by bill of sale all the remaining wares and stock to the plaintiff.

In effect the contract contained an express agreement of defendant to pay Jones for the work of himself and sons and for materials at the end of each month. The writing contains an agreement of defendant's that such payments shall precede any payment on the judgment and claims which defendant held against plaintiff. By the terms of the agreement defendant's said claims were to be paid out of the net proceeds of the business after paying for labor, materials and the other expenses. The defendant by his own contract had precluded himself from setting up his demands as counterclaims. He had agreed that the monthly payments for labor of plaintiff and his sons and for materials should precede any payment on his own claims. Having made such an agreement it must be enforced. (*Kirtz* v. *Peck*, 113 N. Y. 222–228.)

The agreement between the parties was that the expenses of conducting the business, including the plaintiff's claim for work and materials, should be first paid, and the net profits of the business, after deducting such payments, should apply on defendant's demands.

If defendant's contention should prevail he would not pay plaintiff for the labor of himself and sons and for materials furnished as provided in the contract. He would receive the amount due for said labor and materials on his aforesaid demands in addition to the net profits of the business. We think, therefore, that the conclusion of the learned referee that under the contract the plaintiff was entitled to be paid for the services of himself and sons and for materials furnished monthly was correct. The action was on a contract in force when it was commenced. Whatever may be fairly implied

from the terms of an instrument is in judgment of law contained in it. So construing said contract, defendant agreed that out of the business mentioned therein plaintiff should first be paid for labor and materials before any payment was made on defendant's demands. The judgment directed by the referee merely enforces the carrying out of the contract.

We have examined the rulings of the referee made on the trial to which exceptions were taken, and think that none of them call for a reversal of the judgment.

The judgment should be affirmed, with costs.

Mayham, P. J., and Herrick, J., concurred.

Judgment affirmed, with costs.